VAN SYOC CHARTERED
Heidi Kopelson, Esquire
401 Kings Highway South, Building 1
Cherry Hill, NJ 08034
(856) 429-6444
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MADELYN RODIER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 11-cv-4769 |
| | : | |
| CHICO'S FAS, INC., HEIDI MARGGRAF, | : | |
| LISA SCHAFFER, AND JOHN DOES | : | Civil Action |
| 1 THROUGH 15, INCLUSIVE, | : | |
| FICTITIOUS NAMED DEFENDANTS, | : | |
| JOINTLY, SEVERALLY, AND IN THE | : | |
| ALTERNATIVE, | : | |
| | : | |
| Defendants. | : | PLAINTIFF'S RESPONSE TO |
| | | DEFENDANTS' STATEMENT OF |
| | | UNDISPUTED FACTS |

1. Admitted.

2. Admitted.

3. Admitted

4. Admitted.

5. Denied as stated.  Defendant Margraff was not "Plaintiff's" Regional Manager but

   rather, a Regional Manager with Defendant Chico's.

6. Admitted.

7. Admitted.

8. Admitted in part and denied in part. It is admitted that as Store Manager, Plaintiff was responsible for communicating Key Performance Indicators ("KPIs") to the store's staff and ensuring KPA achievement. Further, it is admitted that Plaintiff, as Store Manager, was responsible for recruiting and hiring assistant store managers and sales associates." It is also admitted that Plaintiff, as a Store Manager, was responsible for "consistently meeting or exceeding store sales goals." However, it is denied that Plaintiff was responsible for monitoring associate productivity "to ensure" they met and exceeded Company sales standards. Instead, as Store Manager, Plaintiff was to motivate and train Associates to achieve full potential while meeting and exceeding Company standards." (See Exhibit "B" attached to Defendant's moving papers).

9. Admitted.

10. Admitted.

11. Admitted in part. Denied in part. It is admitted that DeAngelis completed the performance evaluation and provided Plaintiff the ratings set forth in this Paragraph. Additionally, Doreen DeAngelis prepared the typewritten evaluation of Plaintiff attached to the 2008 performance evaluation and attached to Defendants' moving papers as Exhibit "D". DeAngelis commented in relevant part that Madelyn exhibited strength in "customer focus", "driving for results" and "integrity and trust." Specifically, DeAngelis found that:

> (1) Madelyn knows that it takes to run a business. She pushes herself to succeed. She is always one of the top performers amongst her peers and has the respect of them as well.

2

(2) Madelyn is superb at putting the organization first.  She willingly puts in long hours, takes on tough tasks, and does whatever it takes to forward organizational goals.  She neither makes excuses nor complains.

(3) **Madelyn did a great job of filling in for me while on vacation or at DSM meeting.**  Additionally, DeAngelis stated that "[s]ince Madelyn and I did her career goals in December Madelyn has made it her #1 priority and has stepped up to the plate."  (See Exhibit "D" to Defendant's moving papers.) (Emphasis added)   Also attached to the 2008 performance evaluation that was omitted from Defendants' moving papers is an Associate Development Plan wherein DeAngelis articulated that "Madelyn has the skills and traits to be a DSM."  (See Associate Development Plan attached to Plaintiff's Counsel's Certification as Exhibit "A-1").  Plaintiff also received numerous accolades for the awesome job she performed at Store 550.  See Exhibit "A-2" annexed to Plaintiff's Counsel's Certification.

12. Admitted in part.  Denied in part.  It is admitted that Plaintiff completed a self assessment as part of her 2008 performance evaluation because she was asked to do so by DeAngelis.  It is denied that in the self assessment Plaintiff "acknowledged she needed to develop direct reports."  Rather, Plaintiff wrote that she was "developing direct reports and others" and that she has been actively "recruiting and networking each week to improve staffing" so that there is "a ready staff in the drawer."

13. Denied.  Plaintiff prepared the subject Action Plan with DeAngelis after they had a discussion concerning areas of improvement for Store 550.  (See Plaintiff's deposition at pgs. 183:12-185:13 attached to Defendants' moving papers).

12. Denied as stated.  Plaintiff prepared the subject Action Plan with DeAngelis after they had a discussion concerning areas of improvement for Store 550.  (See Plaintiff's deposition at page 183:185:13 attached to Defendants' moving papers).  It is denied that it is "Plaintiff's" Action Plan but rather, it is the Action Plan of Store 550.  Further, it is denied that Plaintiff herself "committed" to any of the items listed in the Action Plan.

13. Denied as stated.  Defendant Shaffer became the District Sales Manager who was responsible for Store 550.

14. Admitted.

15. Admitted.

16. Admitted.

17. Denied as stated.  The goals set forth in the Goals and Objectives Form completed by Defendant Shaffer and provided to Plaintiff on or about May 21, 2009, were goals and objectives that Shaffer expected Plaintiff to perform.

18. Denied.  Plaintiff did object to certain goals and objectives set forth in the 5/21/09 Form.  Specifically, she objected to the Assistant Store Manager, Kenyata Hayes, ("Hayes") having her Average Dollar Sale (ADS) over $100 because Plaintiff had reason to believe that Kenyata Hayes ("Hayes") was stealing from the Company and as a result, she should have been terminated and also because she had no control over her ADS once she had been coached by Plaintiff to improve her ADS.   (See Plaintiff's deposition at pgs. 97:5 to 102:4 annexed to Plaintiff's Counsel's Certification as Exhibit "B").

19. Denied as stated.  Defendants have mischaracterized Plaintiff's testimony.  Plaintiff

4

does not concede that she was given the Record of Associate Contact ("ROAC"),
Chico's corrective action on June 8, 2009, because of the statistics contained in the
ROAC.  Rather, Plaintiff acknowledged that she cannot dispute the statistics in the
ROAC but that she was issued the ROAC because "they wanted me out, quite
honestly" and that was "partly" due to "her age."   (See Exhibit "B" annexed to
Plaintiff's Counsel's Certification at pages 146:9 to 151:7).  Plaintiff believed that she
was issued the ROAC in an effort to terminate her employment because on the visit
before Shaffer issued the 6/8/09 ROAC, she came into Store 550 and made comments
to the effect that "we need to get some young blood in here to pep it up and get those
numbers moving. "  (See Exhibit "B" annexed to Plaintiff's Counsel's Certification as
Exhibit "B" at pages 151:20 to 152:7).

20. Admitted.

21. Denied as stated.  Plaintiff testified that "someone had to take blame for it" (Store
550's statistics) but also stated that she voiced her objection to Store 550 being in the
DC Metro District because you were not comparing "apples to apples" and Store 550
would be hard pressed to compete with stores in the DC Metro area and that "some of
the goals listed in the ROAC were not within her control but that she would do her
"absolute best to meet the goals."   (See, Exhibit "B" annexed to Plaintiff's
Counsel's Certification at pages 148:18 to 149:15).

22. It is admitted that Plaintiff testified to the same.

23. Admitted.

24. Admitted in part.  Denied in part.  It is admitted that attached to the ROAC was
another Goals and Objectives Form setting forth a 30-60-90-day performance plan to

achieve by September 2009.  However, it is denied that Plaintiff did not dispute anything set forth therein.  (See above).

25. Admitted.

26. Admitted.

27. Denied as stated.  While the undated Goals and Objective Form stated that associates were not scheduled to productivity and an assistant store manager position remained open, it further stated that while an assistant store manager position remained open, this was due to no fault of Plaintiff's as it specifically states that she provided an "ASM" candidate to "DSM", but the candidate was not hired.  (See Exhibit "J" attached to Defendants' moving papers).

28. Denied.  While it is admitted that Shaffer testified to this effect, Defendants have not produced a scintilla of evidence other than Shaffer's self-serving statement that this is in fact true and therefore, it is denied.

29. Admitted.

30. Admitted.

31. Denied as stated.  It is admitted that Shaffer sent the June 12, 2009 email to the Store Managers in her District however, the reason why she sent the email is not admitted.

32. It is admitted that Defendant Shaffer included in her Declaration the alleged ages of the Old Town store manager as well as the Pentagon store manager.

33. It is admitted that Defendant Shaffer included in her Declaration her self serving statement that she "counseled other store managers for poor performance" however, Defendants have not produced a scintilla of evidence other than Shaffer's statements to support the same and therefore, it is denied.

6

34. Admitted.

35. Admitted.

36. Denied as stated. It is admitted that Store 5550 failed to meet its monthly sales plan 21 times in the 29 month period between February 4, 2007 and July 4, 2009 however, it is specifically denied, that it was as a result of Plaintiff's inadequate performance. Rather, Plaintiff contends that it was as a result of Store 550's location (Pier Shops at Caesars which was struggling since its 2006 grand opening) as well as the undisputed economic downturn in Atlantic City which adversely affected "all shopping" in the Atlantic City area, including the Chico's store in the Tropicana casino in Atlantic City (Store #495).  (See 6/29/09 email from Shaffer to Marggraf attached to Plaintiff's Counsel's Certification as Exhibit "C", 11/18/07 email from Deangelis to Marggraf attached to Plaintiff's Counsel's Certification as Exhibit "D" and 3/28/13 Atlantic City Press article entitled "Investor Seeks to Buy Pier Shops in A.C." attached to Plaintiff's Counsel's Certification as Exhibit "E").

37. Admitted.

38. Denied as stated.  While Plaintiff admitted that Store 550 had to improve its results, she explained that it was because of a variety of things.  The pier itself was having difficulties, and it didn't help our status at all with what was going on around us, and there just needed to be some—we needed to get out figures up.  It was –Atlantic City itself, we were all about the same decline as the casino was, and we are connected to the casino, as was the Pier.  Store closing all around us every month, empty vacancies.  (See Exhibit "B" annexed to Plaintiff's Counsel's Certification at page 65:4 -17).

Furthermore, when questioned about Store 550's visual standards, Plaintiff testified that one of her visits she came after we had just completed a markdown, so things were not back. I mean, the directive is, when your store is due to open, your focus is on sales, and you do it in between. So, yes, she said, you know things were not done, but there was --- there were reasons why they weren't done...and this was the norm of how that store was. (See Exhibit "B" annexed Plaintiff's Counsel's Certification at pgs. 67:23 to 68: 15)

39. Denied as stated. It is admitted that Plaintiff testified that if she had been the District Store Manager and overseeing Store 550, she would have provided counseling to improve the store and its numbers however, this would not have been done in a vacuum because "I would have really listened to what was happening (referring to the bad economy and the casino area) and not just discount it as –as external.(See, Exhibit "B" annexed to Plaintiff's Counsel's Certification at  pages 136:1-20).

40. Admitted.

41. Denied as stated. It is admitted that Shaffer gave Plaintiff another ROAC but it is not admitted that it was because Plaintiff had not yet me all of the goals and objectives.

42. Admitted.

43. Denied. It is denied that "Plaintiff" did not meet the percentage of last year sales goals or the sales plan goal but rather that Store 550 did not meet those goals. It is further denied that while Plaintiff testified that "the statistics don't lie, her objection was that had the sales plan been "lowered 20 percent the same as Tropicana, we would have exceeded our sales plan by 4.3 percent." (See Exhibit "B" annexed to Plaintiff's Counsel's Deposition at pages 165:14 to 21) Moreover, it is denied that

Plaintiff did not train her associates on new sales terminology. (See Exhibit "B"

annexed to Plaintiff's Counsel's Certification at pages 122:5-123:4).

44. Admitted in part. Denied in part.  It is admitted that Shaffer provided Rodier with an

updated Goals and Objectives Form, updated 7/10/09.  However, it is specifically

denied that those were the reasons Plaintiff was given the Form and/or that these

goals were not being met.  (See Exhibit "B" annexed to Plaintiff's Counsel's

Certification at pages 103:10 to 109:21).

45. Denied.  Plaintiff did not admit that 23 customers walked into Store 550 without

being greeted.  Moreover, Plaintiff explained certain observations made by Shaffer I

Store 550 as follows:

But there were reasons why, and when you are understaffed and your door is open

and, I mean, understaffed by not having enough associates for that size of that store,

and to be able to have it run the way it – it was not always run—in the beginning it –

we were properly staffed, and we had the hours and we had a little bit of leeway with

certain things because we were a casino store, and taking away and taking away and

taking away, then you come down to where you have two associates on the floor and

to try to keep all of this going where you have people walking in and pulling things

out of the racks and taking things down and trying to sell what was up there, it is not

always priority to get it back up there when you need to sell to the person, the next

person walking in the door.  (See Exhibit "B" annexed to Plaintiff's Counsel's

Certification at pages 111:20-112:16)

46. Denied as stated.  It is admitted that Shaffer made these statements to Plaintiff;

however, it is not complete. When Plaintiff asked Shaffer to memorialize their

conversation in writing, she did not answer her.  (See Exhibit "B" annexed to

Plaintiff's Counsel's Certification at page 173:2-14).

47. Denied. It is denied that Plaintiff voluntarily resigned her position with Chico's.

48. Denied. While it is admitted that Shaffer testified that to this effect, Defendants have

not produced a scintilla of evidence other than her self serving statement to support

the same and therefore, it is denied.

49. Denied.  Shaffer "plainly" told Plaintiff that this was not going to be her position as

of September 4, 2009 and that she was not going to make it.  (See Exhibit "B"

annexed to Plaintiff's Counsel's Certification at page 181:5-25).

50. Denied.  While it is admitted that Shaffer testified to this effect, Defendants have not

produced a scintilla of evidence other than her self serving statement to support the

same and therefore, it is denied.

51. Denied.

52. Admitted.

53. Denied.  It is denied that Dolores MacKay was Plaintiff's immediate replacement.

Shaffer testified at her deposition that "the manager that replaced Madelyn, I'm not

sure how old she was.  She didn't last through training.  She came in for a week and

then she left.  So, you know, she was there for a week and a half.  The manager that

ultimately replaced Madelyn was, I believe, in her fifties.  Shaffer testified that the

woman who replaced plaintiff was younger than the plaintiff.  (See, deposition of

Lisa Shaffer at pages 36:3-12 and 53:11-22 annexed to Plaintiff's Counsel's

Certification as Exhibit "F").

54. Denied as stated.  It is admitted that Plaintiff testified to this effect but it is denied that

this is the only factual basis upon which Plaintiff supports her claim of age

discrimination at the hands of the Defendants.  Plaintiff testified that on several of

Defendant Schaffer's visits to the Pier store, she made comments that the staff needed

to be "younger and more energetic" (See Exhibit "B" annexed to Plaintiff's Counsel's

Certification at pages 27:20 to 29:18)  that the "staff was old and needed to be

younger and peppier" (Exhibit "B" at pages 32:7 to 20), that there needed to be

"younger energy" in the store (Exhibit "B" at pages 33:2 -9), that she was directed to

recruit "some younger and more energetic individuals" to the Pier store (Exhibit "B"

at pages 34:6-8) and that on one of her visits she told Plaintiff that she must "lose the

stockings" and "look younger" (Exhibit "B" at pages 37:10-17).  Plaintiff also

testified that on or about July 10, 2009, the day on which Defendant Schaffer told her

that she was incapable of running the Pier store, that "she (the Plaintiff) was not

"going to make it" that Plaintiff could "leave her position at any time or "stick it out

until the end", she asked Defendant Schaffer whether the motivation behind the

adverse employment action was motivated by Plaintiff's age, to which question

Defendant Schaffer was silent.  (Exhibit "B" at pages 167:10-170:25; 173:2 to

175:19).

55. Denied as taken out of context.

56. Denied as a mischaracterization of Plaintiff's testimony.  Plaintiff was asked about

the language contained in Shaffer's email and not the comments she specifically

made to Plaintiff.

57. Denied as stated.  Plaintiff testified that Shaffer told her to "lose the stocking

immediately" because "that is not what we do now", "you have to be with it and not

wear stockings."  (See Exhibit "B" to Plaintiff's Counsel's Certification at page 38:2-25).

58. Admitted.

59. Denied as Plaintiff was asked a legal conclusion to which she was not required to respond.

60. Denied as stated.  This is a mischaracterization of Plaintiff's testimony.  Plaintiff testified that she was present when Marggraf commented to Shaffer, about another employee in her 60s, "Look at the way she looks.  Can you believe it?  I want her gone.  Make it happen.  I want her gone."  Plaintiff also testified that this employee, Cheryl Samuels, contacted her after she left Chico's and told her that she had to leave because she was forced to work in the backroom with the door shut steaming clothes despite the fact that she has asthma.  . (See Exhibit "B" annexed to Plaintiff Counsel's Certification at pages 77:22 to 80:5).

61. Admitted.

62. Admitted.

63. Admitted.

64. Admitted that Plaintiff testified to this effect. However, Plaintiff testified that towards the beginning of 2009, when the overall climate changed, she changed her opinion about Marggraf.  (See Exhibit "B" to Plaintiff's Counsel's Certification at page 193:3-15).

65. Admitted.

66. Admitted.

67. Admitted.

68. Admitted.

69. Admitted.

70. Admitted.

71. Admitted.

72. Admitted.

73. Admitted.

Respectfully submitted,

VAN SYOC CHARTERED

BY: _____
HEIDI R. KOPELSON

DATED: 4/29/13

13