**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                              :
MADELYN RODIER,                               :
                                              :          Civil No. 11-4769 (RBK/AMD)
                              Plaintiff,       :
                                              :
              v.                              :          **OPINION**
                                              :
                                              :
CHICO'S FAS, INC., HEIDI                       :
MARGGRAF, LISA SCHAFFER, AND                   :
JOHN DOES 1 THROUGH 15,                        :
                                              :
                              Defendants.      :
_____       :

**KUGLER**, United States District Judge:

In this case, Plaintiff Madelyn Rodier ("Plaintiff") asserts claims of age discrimination, hostile work environment, and retaliation under the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq.* ("NJLAD"), against her former employer, Defendant Chico's FAS, Inc. ("Chico's"), and her former supervisors, Defendants Heidi Marggraf and Lisa Schaffer. Currently before the Court is the Defendants' motion for summary judgment. (Doc. No. 37). For the reasons stated herein, the Court finds that Plaintiff has failed to offer evidence in support of her NJLAD age discrimination, hostile work environment, and retaliation claims that would create a genuine dispute of material fact for trial. Accordingly, the Court will grant Defendant's motion.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff's action arises out of her alleged treatment during the course of her employment with Defendant Chico's, and the circumstances surrounding her eventual, and allegedly involuntary, resignation.

Plaintiff began her employment with Defendant Chico's in October 2004 as an assistant manager, and was later promoted to store manager at the Tropicana Store located in Atlantic City, New Jersey. (Defendants' Statement of Undisputed Material Facts ("Defs.' SUMF") ¶ 1.) In June 2006, Plaintiff became the store manager at the Chico's store at the Pier at Caesar's Palace, Atlantic City (the "Pier store"). (*Id.* ¶ 2.) As store manager, Plaintiff was responsible for sales and customer satisfaction, store operations, visual presentation, human resources management, and was required to ensure sales goal achievement. (*Id.* ¶¶ 6-7.) Plaintiff was also responsible for communicating Key Performance Indicators ("KPI") to the store's staff and ensuring KPI achievement, recruiting and hiring assistant store managers and sales associates, consistently meeting or exceeding store sales goals, and motivating and training Associates to achieve full potential while meeting and exceeding company standards. (Defs.' SUMF ¶ 8; Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("Pl.'s SUMF") ¶ 8.) In her capacity as store manager, Plaintiff reported to three district sales managers: Doreen DeAngelis, Elise Gourley, and Defendant Lisa Shaffer. (Defs.' SUMF ¶ 3.) DeAngelis, Gourley, and Defendant Shaffer reported to Defendant Heidi Marggraf, Plaintiff's Regional Sales Manager. (*Id.* ¶ 4.)

---

[1] When considering a defendant's motion for summary judgment, the Court views the facts underlying the claims in the light most favorable to the plaintiff. *See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993).

In early 2008, Plaintiff completed a self-assessment evaluating her 2007 performance. (*Id.* ¶ 9.)  In this assessment she confirmed that:  "(1) she did not exceed company expectation of store volume; (2) she allowed non-productive associates to remain employed; (3) her store statistics were lower than company standards; and (4) her store had 'negative comp' for the year."  (*Id.*)  A separate assessment completed by district sales manager Elise Gourley reviewing Plaintiff's 2008 performance, yielded mixed results.  Plaintiff was rated as "demonstrating less than half" of the behaviors related to the following areas:  "(1) directing others, (2) hiring and staffing, (3) motivating others, and (4) priority setting."  (Defs.' SUMF ¶ 11.)  But Plaintiff was rated as exhibiting strength in "customer focus, driving for results and integrity and trust."  (Pl.'s SUMF ¶ 11 (internal quotation marks omitted).)

In early 2009, the Pier store still was not making its numbers, and so Plaintiff partnered with district sales manager Doreen DeAngelis to put together an "action plan" in order to improve results for her store.  (Pl.'s SUMF ¶ 13.)  The action plan stated, among other things, that the "Sales Lead must significantly improve" average dollar sale ("ADS"), that there needed to be an increase of 20% over present ADS by July 4th, and that if goals were not met the Sales Lead would be asked to step down.  (Declaration of Michael Tiliakos in Support of Defs.' Mot. for Summ. J. ("Tiliakos Decl."), Ex. F.)

In May 2009, Defendant Shaffer became Plaintiff's district sales manager.[2]  (Defs.' SUMF ¶ 15; Pl.'s SUMF ¶ 15[3].)  Defendant Shaffer was tasked with, among other things,

_____

[2] Plaintiff denies this fact as stated and instead states that "Defendant Shaffer became the District Sales Manager who was responsible for Store 550."  (Pl.'s SUMF ¶ 15.)  It appears that Plaintiff disputes Defendants' characterization that Defendant Shaffer was "Plaintiff's direct sales manager."  (Defs.' SUMF ¶ 15.)  This disagreement is irrelevant for the instant opinion.

[3] This paragraph is improperly numbered as paragraph 13 in Plaintiff's Response to Defendants' Statement of Undisputed Material Facts.  As there are a number of other instances in her Response where Plaintiff incorrectly numbers her statements, the Court will refer to the proper number throughout this opinion.

improving the performance of the Pier store. (Defs.' SUMF ¶ 16.) On May 21, 2009, Defendant Shaffer gave Plaintiff a Goals and Objectives Form, which directed Plaintiff to "drive sales" and "energize the store team." (*Id.* ¶ 18; Tiliakos Decl. Ex. G.) On June 8, 2009, Defendant Shaffer provided Plaintiff with a Record of Associate Contact ("ROAC"), a Chico's corrective action. The ROAC set forth statistics for the Pier store, which included "comp", plan, average dollar sale, and average dollar sale percentage as compared to the prior year. (*Id.* ¶ 21.) The Pier store was below district numbers for all of these metrics. (*Id.*) The ROAC contained standard language that failure to comply with the guidelines and procedures listed in the ROAC "may result in further corrective action up to and including dismissal." (*Id.* ¶ 25.) Attached to the ROAC was a 30-60-90 day performance plan that set forth goals that Plaintiff was to achieve by September 2009. (*Id.* ¶ 27; Tiliakos Decl. Ex. I.) This plan listed, among others, the following goals and objectives: increase average dollar sale over last year for May at district average or better, achieve district average or better for last year's sales in June, achieve sales plan for June, "attend weekly conference call with bottom 3 YTD comp performers [and] bring gameplan on how to improve store[']s performance to the call." (*Id.*) Defendant Shaffer utilized this same 30-60-90 day plan with other store managers in her district, gave many store managers ROACs for unsatisfactory performance, and counseled other store managers for poor performance. (*Id.* ¶¶ 30, 35; Lisa Shaffer Dep., Sept. 17, 2012, 49:6-22; Declaration of Lisa Shaffer ("Shaffer Decl.") ¶¶ 7, 8.[4])

---

[4] Although Plaintiff denies the truth of these facts in her Response to Defendants' Statement of Undisputed Material Facts, she points to nothing in the record in support of her denial and instead argues—as is inappropriate in a Rule 56.1 Statement of Facts—that because this information comes from Defendant Shaffer's deposition testimony and declaration, it is self-serving and not supported by any other "scintilla of evidence" and thus it is not an undisputed material fact. (*See* Pl.'s SUMF ¶ 30); *Beatty v. Elk Twp.*, No. 08-2235, 2010 WL 1493107, at *4 n.2 (D.N.J. Apr. 14, 2010) ("The Rule 56.1 statement of facts is not the place for argument"). Without more, this fact remains undisputed. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .); *Assadourian v. Harb*, No. 06-

In the twenty-nine month period between February 4, 2007, and July 4, 2009, the Pier store failed to meet its monthly sales plan twenty-one times. (Defs.' SUMF ¶ 38; Pl.'s SUMF ¶ 38.) Plaintiff acknowledged that her store was not performing well, but attributed the Pier store's poor performance to the economy and the decline of the casino industry in Atlantic City. (Madelyn Rodier Dep. ("Pl.'s Dep."), July 7, 2012, 65:4-24.) She also believed that the reason she received a ROAC was not only because of the Pier store's performance, but because Defendants "wanted [her] out" and that was "partly" due to "her age." (Pl.'s SUMF ¶ 21; Pl.'s Dep. 146:9-152:12.) Plaintiff testified that on several of Defendant Shaffer's visits to the Pier store, Defendant Shaffer made certain comments about Plaintiff's staff and directed Plaintiff to recruit "some younger and more energetic individuals" to the store. (Pl.'s Dep. 34:6-13.) She also stated that there needed to be "younger energy" in the store, (*id.* 33:2-9), and, on one occasion, told Plaintiff to "lose the stockings. That's not what we do now," (*id.* 38:2-39:2).

Because Plaintiff was on a three-month performance plan, Defendant Shaffer was required to follow up each month and check on Plaintiff's performance. (Defs.' SUMF ¶ 42.) On or around the thirtieth day of the 30-60-90 day performance plan, Defendant Shaffer gave Plaintiff another ROAC. (Defs.' SUMF ¶ 43; Pl.'s SUMF ¶ 43.) The ROAC stated that "[Plaintiff] has not met the goals and objectives that were set on 6/8/09", the time period within which she must meet her goals and objectives was "immediate and ongoing", and that if the required level of improvement was not achieved and maintained, further corrective action, up to and including dismissal, could result. (Defs.' SUMF ¶ 43; Ex. N.) The ROAC also stated that the Pier store "did not meet the percentage of last year sales goals (-15.6% below last year's store

896, 2010 WL 2560495, at *4 n.2 (D.N.J. June 21, 2010) ("[A]rgument by counsel unsupported by any evidence in the record . . . woefully fails to satisfy Plaintiff's obligation under Local Rule 56.1").

sales goal and -7.4% below last year's district sales goal) or the sales plan goal." (Defs.' SUMF ¶ 45; Pl.'s SUMF ¶ 45.) Plaintiff was provided with an additional Goals and Objectives Form. (Pl.'s SUMF ¶ 46.)

In discussing Plaintiff's latest ROAC and Goals and Objectives Form, on July 10, 2009, Defendant Shaffer told Plaintiff that "she wasn't going to make it; that [Plaintiff] could leave [her] position at any time, or [she] could stick it out until the end[;] [Plaintiff's] decision, and that if [Plaintiff] wanted, she would consider [Plaintiff] for an assistant manager . . . ." (Defs.' SUMF ¶ 48; Pl.'s Dep. 173:2-175:5.) After this meeting, and on the same day, Plaintiff resigned her position with Chico's. (Defs.' SUMF ¶ 49; Pl.'s SUMF ¶ 49.)

Almost one year later, on July 8, 2011, Plaintiff filed suit against the Defendants in the Superior Court of New Jersey, Atlantic County. Plaintiff claims that Defendants discriminated against her because of her age, that she was subjected to discriminatory comments, and eventually resigned her position involuntarily because she "saw the writing on the wall" and knew she would eventually be terminated. Plaintiff alleges that Defendants have violated the NJLAD, and are also liable for creating a hostile and retaliatory work environment. (*See* Compl., Doc. No. 1.)

On August 18, 2011, Defendants filed a notice of removal pursuant to 28 U.S.C. § 1441, invoking this Court's jurisdiction under 28 U.S.C. § 1332(a). In an Order dated August 24, 2011, this Court ordered the Defendants to file an Amended Notice of Removal properly alleging the citizenship of every party and alleging that diversity of citizenship exists. (Doc. No. 3.) Defendants filed their Amended Notice of Removal on August 25, 2011, properly alleging diversity citizenship, and answered Plaintiff's Complaint. (Doc. Nos. 4, 10, 21, 23.)

On March 22, 2013, Defendants filed the instant motion for summary judgment. (Doc. No. 37.) The crux of Defendants' motion is that Plaintiff has failed to offer facts in support of her claims, such that no genuine dispute of material fact exists that would warrant a trial, and that Defendants are entitled to judgment as a matter of law. The Court will examine each of Plaintiff's claims in turn.

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish

the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x. 353, 354 (3d Cir. Sept. 17, 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. *BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

### A. Age Discrimination

The New Jersey Law Against Discrimination ("NJLAD") prohibits an employer from discriminating in the "terms conditions, or privileges of employment" on the basis of a person's age. N.J. Stat. Ann. § 10:5-12(a). The contours of an NJLAD age discrimination claim are strongly informed, though not inexorably resolved, by reference to federal substantive and procedural rules in the Title VII context. *Hernandez v. Fed. Express*, No. 06-4745, 2008 WL 163642, at *3 (D.N.J. Jan. 16, 2008) (citing *Gerety v. Atlantic City Hilton Casino Resort*, 877 A.2d 1233, 1237 (N.J. 2005)); *accord Bergen Comm. Bank v. Sisler*, 723 A.2d 944, 954 (N.J. 1999) ("To the extent the federal standards [for age discrimination] are 'useful and fair,' they will be applied in the interest of achieving uniformity in the discrimination laws.")

To state a *prima facie* cause of action under the NJLAD, Plaintiff must demonstrate that (1) she belongs to a protected class, (2) her job performance met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) "the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Anderson v. Thermo Fisher Scientific*, No. 11-3394, 2013 WL 1222738, at *3 (D.N.J. Mar. 25, 2013). In the context of an age discrimination claim, the fourth prong requires a showing that the plaintiff was replaced by someone sufficiently younger, so as to permit an inference of age discrimination. *Id.* Plaintiff can establish this *prima facie* case through the use of either direct or circumstantial evidence. *Arenas v. L'Oreal USA Prods., Inc.*, 790 F. Supp. 2d 230, 235 (citing *Sisler*, 723 A.2d 944, 954).

1. Plaintiff's Direct Evidence Discrimination Claim under the NJLAD

Direct evidence of wrongful discharge under the NJLAD would establish that "decisionmakers placed substantial reliance on an illegitimate criterion"—in this case, Plaintiff's age—in reaching an adverse employment decision. *Id.* "Such evidence must 'demonstrate not only a hostility toward [older employees], but also a direct causal connection between that hostility'" and an adverse employment decision. *Id.* If Plaintiff "is able to satisfy this rigorous burden and establish a direct prima facie case that age, *per se*, was a substantial factor in an adverse employment decision, the burden then shifts to [the Defendants] to show that they would have made the same decision even in the absence of the impermissible criterion." *Id.* Direct evidence, if believed, "proves [the] existence of [the] fact in issue without inference or presumption." *Buchholz v. Victor Printing, Inc.*, 877 F. Supp. 2d 180, 185 (D.N.J. 2012).

Here, Plaintiff argues that there is direct evidence of age discrimination. In support of this claim, she points to Defendant Shaffer's statements to Plaintiff regarding the employees in her store and Plaintiff's clothing, which she believes evinced a bias toward older employees.[5]

Plaintiff alleges that during several of Defendant Shaffer's visits to the Pier store, she made discriminatory comments, such as: (1) "the staff needed to be 'younger and more energetic'", (2) the "'staff was old and needed to be younger and peppier,'" (3) "there needed to be 'younger energy' in the store", (4) Plaintiff should "recruit 'some younger and more energetic individuals' to the Pier store," and (5) on one occasion, Defendant Shaffer told Plaintiff "she must 'lose the stockings' and 'look younger.'" (Pl.'s Br. in Opp'n to Defs.' Mot. For Summ. J. ("Pl.'s Opp'n") 4-5; Pl.'s Dep. 27:20-37:17.)

First, all but one of Defendant Shaffer's comments were directed toward Plaintiff's staff, not Plaintiff. These comments are more appropriately characterized as circumstantial evidence because they lack the requisite direct causal connection needed to conclude that Plaintiff's age, *per se*, was a substantial factor in Defendants' adverse employment decision.[6] Instead, in order to find that Plaintiff provided sufficient evidence to make out a claim under the NJLAD, a fact-finder would evaluate this evidence and then need to infer that because Defendant Shaffer stated,

---

[5] As discussed below, Plaintiff claims that she was subjected to an adverse employment decision because she did not voluntarily resign, but was constructively discharged. *See* section A.2.ii *infra*.

[6] *See, e.g.*, *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1553 (11th Cir. 1988) (discussing statements by supervisor, among others, that "he saw too many older employees whom he termed the 'old guard' in the management and engineering staff, that he did not care to have managers reporting to him that were older than he was, that the company needed 'new, young blood,'" referring to various employees as "'old farts,' 'old bastards,' 'little old ladies,' 'old cows,' and even declared during management meetings that 'everyone over 35 should be sacked' were examples of circumstantial evidence); *Harth v. Daler-Rowney USA Ltd.*, 2012 WL 893095, at *4-5 (D.N.J. Mar. 15, 2012) (holding that CEO's expression that "the company needed to get 'younger and cheaper,'" which was used on "several occasions when discussing the future of the company," did "not support a direct evidence theory of age discrimination where remark was uttered ten months before Plaintiff's termination, was not in reference to Plaintiff specifically, and Plaintiff testified "that he understood this phrase solely referred to [the CEO's] motivation to save money").

for example, that "the *staff* needed to be 'younger and more energetic'", that it was actually *Plaintiff's* age that posed a problem for Defendants and that Defendants issued Plaintiff ROACs and put her on a performance plan in an effort to get rid of her. (Pl.'s Dep. 27:20-37:17 (emphasis added).) This type of reasoning is characteristic of a claim based on circumstantial evidence and stands in stark contrast to the kinds of statements typically considered by courts to be direct evidence where the evidence supported the truth of an assertion directly, without the need for additional evidence or inference. *See, e.g.*, *Edwards v. Panther Technologies, Inc.*, No. 10-5214, 2012 WL 5880276, at *10 (D.N.J. Nov. 19, 2012) (holding that Plaintiff presented direct evidence of a negative reliance on an illegitimate criterion—Plaintiff's disability—with testimony that Defendant supervisor told Plaintiff that he was "no good for [employer] anymore" because of his "back being injured"); *see also Fakete v. Aetna*, 308 F.3d 335, 336, 339 (3d Cir. 2002) (concluding that remark from superior to employee that "the new management . . . wouldn't be favorable to [him] because they are looking for younger single people that will work unlimited hours and that [he] wouldn't be happy there in the future" made a few months before employee was fired was a "clear, direct warning to [the employee] that he was too old to work for [the employer], and that he would be fired soon if he did not leave . . . on his own . . . ."); *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 n.13 (11th Cir. 1988) (stating that "[a]n example of direct evidence would be a scrap of paper saying, 'Fire Rollins—she is too old'").

Further, Plaintiff's own testimony contradicts her assertion that she has made out a direct evidence claim. Although Plaintiff testified that Defendant Shaffer said the staff was "older", she later admitted that Defendant Shaffer did not actually say that the staff was "older", but that she was "paraphrasing" and "I don't know that she – she made reference to the staff being older." (Pl.'s Dep. 32:3-20.) Indeed, the one statement that Plaintiff testified was made directly

to her by Defendant Shaffer—that "she must 'lose the stockings' and 'look younger'"— was not

a word-for-word characterization. Instead, Plaintiff inferred that when Defendant Shaffer told

her to "lose the stockings", Defendant Shaffer *meant* that Plaintiff needed to look younger. (Pl.'s

Dep. 38:2-39:11.) These statements, without more, are not direct evidence of a hostility toward

members of Plaintiff's class, and Plaintiff's own inferences regarding Defendant Shaffer's

statements are indicative of the fact that they are not properly considered as such.

### 2. Plaintiff's Prima Facie Case under the *McDonnell Douglas* Standard

When a claimant is unable to establish discriminatory employment actions through the

use of direct evidence, he or she may use circumstantial evidence. In evaluating a NJLAD claim

based on circumstantial evidence, the Court applies the three step burden shifting framework

advanced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Wright v. L-3

Comms. Corp.*, 227 F. Supp. 2d 293, 297 (D.N.J. 2002) (citing *Sisler*, 723 A.2d at 955).

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of

establishing the four elements of a *prima facie* case of age discrimination. *See Wright*, 227 F.

Supp. 2d at 297. Doing so creates a rebuttable presumption that the employer unlawfully

discriminated against him or her. *Id.* Consequently, upon the plaintiff establishing his or her

*prima facie* case, the burden shifts to the defendant who must "come forward with admissible

evidence of a legitimate, non-discriminatory reason for its rejection of the employee." *Id.* (citing

*Sisler*, 723 A.2d at 955). If the defendant employer can offer such a reason, the presumption of

unlawful discrimination falls away, and the burden shifts back to the plaintiff, who must show

"that the legitimate nondiscriminatory reason articulated by the defendant was not the true reason

for the employment decision but was merely a pretext for discrimination." *Id.* (citing *Sisler*, 723

A.2d at 955). When conducting this analysis, the Court is mindful that the plaintiff's burden, in

its essence, is to show that his or her age "played a role in the employer's decisionmaking process and had a determinative influence on the outcome of that process." *Monaco*, 359 F.3d at 300.

In this case, Defendants do not dispute that Plaintiff is a member of a protected class, but argue that she cannot otherwise establish a *prima facie* case for age discrimination under the NJLAD. (Defs.' Br. in Support of Mot. For Summ. J. ("Defs.' Br.") 13-17.)

    i.    Job Performance

Once the Court determines that a plaintiff is a member of a protected class, it then evaluates whether the plaintiff's job performance met his or her employer's legitimate expectations. Defendants argue that Plaintiff cannot meet this burden because the record shows that Plaintiff did not in fact meet Chico's legitimate expectations; indeed, she was repeatedly counseled by district managers in an effort to improve her performance because her Chico's location routinely failed to meet its goals and objectives. (Defs.' Br. 13-14.) Plaintiff responds that Defendants' argument is inappropriate at this stage of the Court's analysis because the relevant inquiry here is simply whether Plaintiff was performing her job prior to the adverse employment event, and not whether her actual performance met Chico's expectations. (Pl.'s Br. 6.) Plaintiff is correct.

At this stage of the *McDonnell Douglas* analysis, a plaintiff need only show that she was actually performing the job prior to her termination and had the "education and experience necessary to qualify for the position [s]he held." *Swider v. Ha-Lo Indus., Inc.*, 134 F. Supp. 2d 607, 622-23 (D.N.J. 2001). "[P]erformance marks like poor evaluations are more properly debated in the second and third stages of the burden shifting test[;] they do not come into play as part of the second prong of the prima facie case." *Zive*, 182 N.J. at 455, 867 A.2d 1133 (citing

13

*Greenberg v. Camden Cty. Vocational & Technical Schools*, 708 A.2d 460, 467 (N.J. Sup. Ct. App. Div. 1998)).

A review of the evidence shows that Plaintiff became store manager at the Pier store in June 2006, and performed her job as store manager from 2006 until her resignation in July 2009. (Pl.'s Dep. 19:6-14.) Accordingly, Plaintiff has established that her performance met Chico's legitimate expectations. *See Buchholz v. Victor Printing, Inc.*, 877 F. Supp. 2d 180, 188 (D.N.J. 2012).

ii. Adverse Employment Action

Next, the Court analyzes whether Plaintiff suffered an adverse employment action. Because Plaintiff resigned from her position as Store Manager at the Pier store, whether she suffered an adverse employment action is analyzed under the doctrine of constructive discharge. *See Vanartsdalen v. Twp. of Evesham*, No. 05-1508, 2007 WL 2219447, at *7 (D.N.J. Aug. 2, 2007). Constructive discharge occurs when an "employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 887 (3d Cir.1984) (internal quotation marks omitted)). This is an objective inquiry. *Vanartsdalen*, 2007 WL 2219447, at *4 (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004)).

Here, Defendants argue that although Plaintiff alleges that she was constructively terminated, she bases these allegations on subjective perceptions rather than fact. Simply, the conditions at Chico's were not "so unpleasant or difficult that a reasonable person would have felt compelled to resign." (Defs.' Br. at 15-16.) Plaintiff disputes Defendants' assertions, and argues that although she resigned, the "demoralizing, humiliating and discriminatory conduct

and comments made to her and/or in her presence by Defendants Shaffer and Marggraf . . . created a work environment so intolerable that a store manager in [her] position would be forced to resign."  (Pl.'s Opp'n 8-9.)

In *Clowes v. Allegheny Valley Hospital*, the Third Circuit set forth a number of factors to be considered when determining whether an individual has been constructively discharged.  991 F.2d 1159, 1161 (3d Cir. 1993).  These factors include an employer's efforts to:  (1) demote an employee; (2) reduce an employee's pay or benefits; (3) involuntarily transfer an employee to a less desirable position; and (4) alter an employee's job responsibilities.  In evaluating the instant record in light of these factors, the Court is not convinced that a reasonable trier of fact could find that Plaintiff was constructively discharged.

First, Plaintiff has not directed the Court to any part of the record showing that her pay and benefits were reduced, she was transferred to a less desirable position, or her job responsibilities were altered.  The only employer action that could arguably be characterized as impacting Plaintiff's responsibilities were the ROACs and performance plan.  However, it does not appear from the record that the performance plan set forth goals and objectives for Plaintiff to achieve that somehow fell outside her typical responsibilities as a store manager or altered her current responsibilities, and Plaintiff offers no argument or factual contentions tending to support a different conclusion.  Indeed, these tools were regularly used by Chico's and upper management to improve store performance.  It appears from the record that Defendant Shaffer used ROACs and performance plans with other employees who were dealing with underperforming stores.  (Shaffer Dep. 49:6-22.)  Although Plaintiff argues that the reason she received ROACs and was put on a performance plan was because of her age, (Pl. Opp'n 12-13), "an unfavorable evaluation, unaccompanied by a demotion or similar action is insufficient" to

establish an adverse employment action. *El-Sioufi v. St. Peter's University Hosp.*, 887 A.2d 1170, 1184 (N.J. Super. Ct. App. Div. 2005)

Plaintiff does state in her response to Defendants' statement of undisputed material facts that "[Defendant] Shaffer plainly told [her] that [the store manager position] was not going to be her position as of September 4, 2009," and she testified that Defendant Schaffer told her that she was "not going to make it." (Pl.'s SUMF ¶ 51.) However, Plaintiff also admitted that when Defendant Schaffer told her she "wasn't going to make it" she understood that comment to mean "that the goals and objectives [set forth in Plaintiff's Action Plan] would not be met by" September 4, 2009. (Pl.'s Dep. 181:5-25.) It was in this context that Defendant Shaffer stated that Plaintiff "could leave [her] position at anytime, or [she] could stick it out until the end" and "if [she] wanted[, Defendant Shaffer] would consider [her] for an assistant manager [position]." (Pl.'s Dep. 173:6-12.) Although Plaintiff believed that the "writing [was] on the wall" and that she would be terminated, (Pl.'s Opp'n 9), a review of the record reveals that Defendant Shaffer lacked the power to terminate Plaintiff on her own. (Shaffer Decl. ¶ 10.[7]) More importantly, however, Plaintiff was not actually demoted or transferred to a less desirable position before she resigned.

Finally, Plaintiff fails to direct the Court to any part of the record tending to show that her job was rendered impossible. She points to statements made by Defendants Shaffer and Marggraf "about wanting to infuse the work environment with younger, more energetic and stylish managers," (Pl.'s Opp'n 9), and argues that these comments created the intolerable work environment; however, these comments are not sufficiently disparaging or offensive, nor did

---

[7] Plaintiff again denies this fact in her Response to Defendants' Statement of Undisputed Material Facts, based on nothing more than the argument that because this information comes from Defendant Shaffer declaration, it is self-serving and not supported by any other "scintilla of evidence" and thus is denied. (See Pl.'s SUMF ¶ 52.) Again, without more, this fact remains undisputed. *See* note 4 *supra*.

they happen with any regularity or frequency, such that a reasonable person in Plaintiff's position would have felt compelled to resign. *See Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 170 (3d Cir. 2001) (holding that comments to Plaintiff, made several times over the course of her employment, that "she was getting older and wasn't remembering things as she got older" and "that she was getting older and suggested that she look for another job with fewer hours," were inappropriate, [but] [ ] were not sufficiently derogatory or offensive to compel a reasonable person to resign . . . and did not create intolerable working conditions" especially where they "did not happen on a constant or even frequent basis"); *Vanartsdalen*, 2007 WL 2219447, at *5 (holding that Defendant's interactions with Plaintiff that included interacting with Plaintiff "in a hostile and demeaning manner and refus[ing] to apologize for her mannerisms," failing "to provide training to Plaintiff, and questioning Plaintiff's "ability to provide customer service because of her Spanish accent, "may have made Plaintiff's work more difficult . . . but [ ] did not render Plaintiff's job impossible").

Based on the record, the Court cannot conclude that conditions at Chico's were so intolerable that a reasonable person in Plaintiff's position would have felt compelled to leave. Plaintiff's subjective belief that the conditions of her employment were "demoralizing and humiliating" and that the "writing [was] on the wall," (Pl.'s Opp'n 9), is "insufficient to establish constructive discharge under the objective standard." *Vanartsdalen*, 2007 WL 2219447, at *5 ("A subjective belief that the circumstances of one's employment "were too onerous to bear is insufficient to establish constructive discharge under the objective standard."). Accordingly, because Plaintiff has failed to establish constructive discharge, and thus has failed to make out a *prima facie* case of age discrimination under the NJLAD, the Court need go no further in its

*McDonnell Douglas* analysis, and will grant summary judgment on this claim in Defendant's favor.

**B.  Age Harassment**

Plaintiff also alleges that she was subjected to a hostile work environment in violation of the NJLAD.  It appears that she seeks to hold Defendant Chico's liable for its own conduct and vicariously liable for Defendant Shaffer's conduct.  (*See* Compl. ¶ 1 (alleging that Defendant Chico's "created, tolerated, maintained, and encouraged a hostile work environment to exist at plaintiff's place of employment based upon plaintiff's age"); ¶ 20 (alleging that Defendant Shaffer's hostile behavior was "authorized, ratified, condoned, or acquiesced in by her superiors").)

"A plaintiff alleging a hostile work environment based on age must establish that the defendant's conduct (1) would not have occurred but for the person's age, and the conduct was (2) severe or pervasive enough to make a (3) reasonable age-protected employee believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Feraro-Bengle v. Randstad North Am., L.P.*, No. 03-1650, 2006 WL 2524170, at *4 (D.N.J. Aug. 30, 2006) (citing *Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005)).

An employer can be held vicariously liable "for the actions of a plaintiff's coworkers." *Cortes v. Univ. of Med. & Dentistry of New Jersey*, 391 F. Supp. 2d 298, 308 (D.N.J. 2005) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001)).  To establish vicarious liability, "the plaintiff must show that the employer failed to provide a reasonable avenue for complaint or was aware of the alleged harassment and failed to take appropriate remedial action." *Id.*  If an employer has exercised due care in working to prevent a hostile work environment, it may avoid vicarious liability.  *Barroso v. Lidestri Foods, Inc.*, 937 F. Supp. 2d

620, 634 (D.N.J. 2013). "The establishment of an effective anti[]-harassment workplace policy and complaint mechanism evidences an employer's due care and may provide affirmative protection from vicarious liability." *Id.*[8]

When evaluating hostile work environment claims, courts should consider the "totality of the circumstances," rather than "individual incidents." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482-84 (3d Cir. 1990). Courts may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Feraro-Bengle*, 2006 WL 2524170, at *4 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993) (internal quotation marks omitted)). Offhanded comments and isolated incidents are insufficient to sustain a hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). And "speculations, generalities, and gut feelings, however genuine, do not permit an inference of discrimination to be drawn." *Chambers v. Heidelberg USA, Inc.*, No. 04-583, 2006 WL 1281308, at *6 (D.N.J. May 5, 2006) (citation omitted)."

Here, Plaintiff points to no evidence in the record that specifically supports her hostile work environment claim, nor does she oppose Defendants' factual contentions and legal arguments regarding the same. The only alleged discriminatory conduct Plaintiff identifies were the comments by Defendant Shaffer discussed *supra*, and one other comment that Defendant

---

[8] "In order for an employer to enjoy the benefit of that safe haven from vicarious liability based on maintaining an active anti-harassment policy, the following circumstances are 'relevant: periodic publication of the employer's anti-harassment policy, the presence of an effective and practical grievance process for employees to use, and training for workers, supervisors, and managers concerning how to recognize and eradicate unlawful harassment.'" *Barroso v. Lidestri Foods, Inc.*, 937 F. Supp. 2d 620, 634-35 (D.N.J. 2013) (quoting *Gaines v. Bellino*, 801 A.2d 322, 323 (N.J. 2002)).

Marggraf made to Defendant Shaffer, in Plaintiff's presence, about another Chico's employee.[9] Plaintiff did not identify any specific conduct by Defendant Chico's.

Although Plaintiff argues that she found these comments to be demoralizing and humiliating (Pl.'s Opp'n 9), four comments spanning Plaintiff's three years as the store manager of the Pier Store, are neither frequent, nor severe enough, to establish a hostile work environment claim.[10]  Further, Plaintiff has not has not alleged, nor does she argue now, that Defendant Shaffer or Defendant Marggraf's comments were physically threatening or humiliating.  *See Reynolds v. Dep't of Army*, No. 08-2944, 2010 WL 2674045, at *15-16 (D.N.J. June 30, 2010) *aff'd*, 439 F. App'x 150 (3d Cir. 2011) (holding that Plaintiff failed to establish a *prima facie* case of hostile work environment where, among other things, Plaintiff failed to assert that certain comments made "were physically threatening or humiliating or affected his work performance").

In evaluating the totality of the circumstances set forth by Plaintiff, the Court is not persuaded that a reasonable fact finder could view the evidence as showing that Defendant Shaffer and Defendant Marggraf's conduct was severe or pervasive enough to make a reasonable age-protected employee believe that the conditions of employment were altered and the working environment was hostile or abusive.  Having failed to raise a genuine issue of material fact as to Defendant Shaffer and Defendant Marggraf's conduct, vicarious liability cannot attach to

---

[9] Plaintiff believes that Defendant Marggraf's comment about that other employee, who Plaintiff estimates was in her sixties at the time—"Look at the way she looks.  Can you believe it?  I want her gone.  Make it happen.  I want her gone"—illustrated the fact that Defendants targeted Plaintiff because of her age.  (Pl.'s Dep. 78:7-79: 17.)

[10] *Compare Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 279 (3d Cir. 2001) (reversing district court's grant of summary judgment on hostile work environment claim and holding that a jury could find harassment pervasive where it occurred over a two-year period and included "'unprecedented' monitoring of [Plaintiff's] conferences and absences, [Plaintiff being charged] with a sick day on a Jewish holiday when she was not scheduled to teach, [supervisors] criticizing and raising their voices at [Plaintiff] regarding her lack of availability during the Sabbath, [supervisor] scheduling meetings on Jewish holidays and refusing to change them so [Plaintiff] could attend, and [supervisor's] pointed statement to [Plaintiff] regarding her faith and behavior ("The trouble with you is that it doesn't show that you are Orthodox")), *with Benny v. Pennsylvania, Dept. of Corrections*, 211 F. App'x 96, 97 (3d Cir. 2006) (in holding that plaintiff's claim for sex discrimination based on hostile work environment failed on the merits, stating that "sporadic incidents of sexually inappropriate language that plaintiff alleges do not comprise an objectively hostile work environment").

Defendant Chico's. Accordingly, the Court will grant summary judgment to Defendants on this claim as well.

### C. NJLAD Retaliation Claim

In addition to her hostile work environment and discrimination claims, Plaintiff also brings an unlawful retaliation claim against the Defendants.

In order to establish a *prima facie* case of retaliation in violation of the NJLAD, a Plaintiff must allege three elements: "(1) the employee engaged in a protected activity; (2) the employee was subjected to an adverse employment action; (3) there is a causal connection between the protected activity and the adverse employment action." *Edwards v. Panther Technologies, Inc.*, No. 10-5214, 2012 WL 5880276, at *14 (D.N.J. Nov. 19, 2012) (citing *Woods-Pirozzi v. Nabisco Foods*, 675 A.2d 684, 695 (N.J. Sup. Ct. App. Div. 1996)). "The first prong and the central element of a retaliatory discharge claim under [NJ]LAD is that the plaintiff be engaged in a protected activity which is known by the alleged retaliator." *Id.* (citing *Young v. Hobart West Group*, 897 A.2d 1063, 1073 (N.J. Sup. Ct. App. Div. 2005) (internal quotation marks omitted)). "The shifting burdens of proof of *McDonnell Douglas* apply to retaliation claims." *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 335 (D.N.J. 1995).

In this case, Plaintiff fails to set forth any instances of protected activity under the NJLAD in which she engaged. Indeed, a thorough review of the record reveals that Plaintiff has not opposed any practice made unlawful by the NJLAD. What the record does reveal, however, is ample evidence that Plaintiff was familiar with Defendant Chico's Associate Handbook, which contained "equal employment opportunity, anti-harassment/complaint procedure, open door, and code of ethics policies." (Pl.'s Dep. 49:3-51:25.) Further, Plaintiff understood that there were ways to complain about discrimination under these policies. (Pl.'s Dep. 51:1-21.) Finally,

Plaintiff knew that Defendant Chico's "maintained a complaint hotline and knew how to lodge a complaint." (Defs.' SUMF ¶ 74; Pl.'s Dep. 49:3-51:25.) Plaintiff did not utilize any of these mechanisms to make any complaint of age discrimination, harassment, or retaliation, nor did she complain about Defendant Shaffer or Defendant Marggraf's comments. (Pl.'s Dep. 52:1-54:1.) In reviewing the record, the Court observes that the only time Plaintiff discussed age with one of the Defendants was during her July 10, 2009, meeting with Defendant Shaffer; however, Plaintiff resigned immediately thereafter. (Pl.'s Dep. 34:23-35:22, 173:2-175:5.)

In reviewing the instant record, the Court concludes that there is no issue of triable fact as to whether Plaintiff engaged in protected activity under the NJLAD. Protected activity has been held to encompass, among other things: (1) the filing of discrimination charges with the EEOC, *see Khair*, 893 F. Supp. at 335; (2) an employee's complaints about alleged sexual harassment to her employer's Human Services Department and the EEO, *see Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 424 (D.N.J. 2003); and (3) letters to supervisors alerting them of alleged discriminatory treatment, *see Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265 287-88 (3d Cir. 2001). A unifying theme throughout these cases is some type of action, whether formal or informal, by which the plaintiff complained of alleged discriminatory conduct. This type of action is noticeably absent from the record here; indeed, the record evinces a complete lack of action on Plaintiff's part, absent her resignation.

Accordingly, because the Court concludes that no rational jury could find that Plaintiff was engaged in a protected activity, Defendants will be granted summary judgment on this claim as well. *See Edwards*, 2013 WL 5880276, at *14 (summary judgment granted and retaliation

claim dismissed where plaintiff presented no evidence that he was engaged in a protected activity). [11]

### D.    Claims Against Defendants Shaffer and Marggraf

Because the NJLAD "imposes liability only on 'employers' and not on individual employees . . . the only way for an employee to be found individually liable under the NJLAD is if he is involved in aiding or abetting an employer's discriminatory conduct . . . .  Accordingly, while an employee cannot be held individually liable on his own, '[e]mployers and individual supervisors can be held liable under the [NJLAD] for aiding and abetting another's [ ] discriminatory conduct."  *Horvath v. Rimtec Corp.*, 102 F. Supp. 2d 219, 228 (D.N.J. 2000) (citing *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999)).

Plaintiff must establish three elements for an aiding and abetting claim under the NJLAD: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation."  *Hurley*, 174 F.3d at 127 (citations omitted).

Defendants argue that Plaintiff's claims against Defendants Shaffer and Marggraf should be dismissed because Plaintiff fails to plead a claim for "aiding and abetting" liability and fails to point to any part of the record that would establish such liability.  (Defs.' Br. 26-27.)  Regardless of whether Plaintiff has failed to properly allege this claim or point to any part of the record establishing aiding and abetting liability, however, Plaintiff has failed to present triable issues of fact on her underlying age discrimination, harassment, and retaliation claims.  Because

---

[11] The Court notes that even if Plaintiff had engaged in protected activity, she has still failed to raise an issue of triable fact that she was somehow subjected to an adverse employment action, *i.e.*, that she was constructively terminated.  *See* section A.2.ii *supra*.  Since Plaintiff must also show an adverse employment action to succeed on a claim of retaliation under the NJLAD, Plaintiff's claim fails on this separate ground as well.

Defendant Chico's is entitled to summary judgment on those claims, Defendants Marggraf and Shaffer cannot be held individually liable for those same claims. *See Monaco*, 359 F.3d 307 n.15 ("[I]nasmuch as we hold that the district court correctly granted summary judgment to the corporate defendants, any claim he brought against the individual defendants for aiding and abetting fails as well"); *Jackson v. Del. River & Bay Auth.*, No. 99-3185, 2001 WL 1689880, at *22 (D.N.J. Nov. 26, 2001) ("If the NJLAD does not apply to the employer [ ], then no individual aiding and abetting liability may be found, because an employer's liability must be shown before any supervisory liability for violations can exist.").

Accordingly, the Court dismisses Plaintiff's claims against Defendants Shaffer and Marggraf. *See Swingle v. Novo Nordisk, Inc.*, No. 08-1186, 2009 WL 2778106, at * 8 (D.N.J. Aug. 27, 2009) (holding that because employer Novo was not liable under the NJLAD, the "individual defendants cannot be held liable for aiding and abetting").

**E. PUNITIVE DAMAGES**

Finally, under NJLAD, an employer can be liable for punitive damages "only in the event of actual participation by upper management or willful indifference." *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 569 (D.N.J. 2000) (internal quotation marks and citations omitted). Because there are no genuine issues of material fact with regard to Plaintiff's claims, Plaintiff is precluded from recovering punitive damages as a matter of law. Accordingly, Plaintiff's claim for punitive damages will also be dismissed.

**IV.     CONCLUSION**

For the reasons stated above, the Court will grant Defendants' motion for summary

judgment on Plaintiff's NJLAD age discrimination, hostile work environment, retaliation, and

punitive damages claims.  An appropriate order shall issue today.


Dated: 11/22/2013                                    /s/ Robert B. Kugler____
                                                     ROBERT B. KUGLER
                                                     United States District Judge